Dustin HOFFMAN, Plaintiff,

v.

CAPITAL CITIES/ABC, INC., Fairchild
Publications, Inc., and Los Angeles
Magazine, Inc., Defendants.

No. CV 97–3638 DT (Mcx).

United States District Court,
C.D. California.

Jan. 22, 1999.

Bertram Fields, Charles N. Shephard, Aaron J. Moss, Greenberg Glusker Fields Claman & Machtinger, LLP, Los Angeles, CA, for plaintiff.

Steven M. Perry, Steven B. Weisburd, Munger, Tolles & Olson, LLP, Los Angeles, CA, for defendants.

## COURT'S MEMORANDUM OF DECISION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

TEVRIZIAN, District Judge.

### I

### *MEMORANDUM OF DECISION*

The above action came on regularly for trial on January 12, 13, 14 and 15, 1999.

Greenberg Glusker Fields Claman & Machtinger, LLP by Charles N. Sheppard, Esq. and Aaron J. Moss, Esq., appeared for Plaintiff, Dustin Hoffman.

Munger, Tolles & Olson, LLP by Steven M. Perry, Esq. and Steven B. Weisburd, Esq., appeared for Defendants, Los Angeles Magazine, Inc. and ABC, Inc. (formerly known as Capital Cities/ABC, Inc.).

Evidence was presented to the Court sitting without a jury. Oral argument made on behalf of the respective parties was presented and considered by the Court. The Court, now feeling fully advised, rules as follows:

1. Defendant ABC, Inc.'s Motion for Judgment pursuant to Federal Rule of Civil Procedure 52(c) is granted. The Court finds that insufficient evidence was presented to the Court on the theories of ratification and/or alter ego to hold Defendant, ABC, Inc., liable;

2. Plaintiff is entitled to judgment as against Defendant, Los Angeles Magazine, Inc., in the total sum of $1,500,000 for compensatory damages on all causes of action asserted by Plaintiff as against Defendant, Los Angeles Magazine, Inc.;

3. Plaintiff is entitled to an award of punitive damages as against Defendant, Los Angeles Magazine, Inc., in a sum to be ascertained after further evidence is presented to the Court. Evidence on this issue will be presented to the Court on January 28, 1999, at 9:30 a.m. in this Courtroom. The Court finds, pursuant to clear and convincing evidence, that the conduct of Defendant, Los Angeles Magazine, Inc., was wilful, malicious and in conscious disregard of Plaintiff's rights pursuant to California Civil Code Section 3294 in that said Defendant has been guilty of oppression, fraud and malice as defined in the said civil code section;

4. Plaintiff is entitled to an award of attorney's fees in an amount to be fixed by the Court pursuant to California Code of Civil Procedure, Section 3344(a) and Section 35 of the Lanham Act, 15 U.S.C. § 1117(a); and,

5. Plaintiff is entitled to costs of suit as against Defendant, Los Angeles Magazine, Inc.

### II

### *FINDINGS OF FACT*

Plaintiff, Dustin Hoffman, is a highly successful and recognizable motion picture actor. For the past thirty years he has appeared in scores of motion pictures and has received numerous honors, including six Academy Award nominations and two Academy Awards. He has also been nominated and has been awarded a Golden Globe Award and an Emmy Award for his work. It can be said that Mr. Hoffman is truly one our country's living treasures, joining the ranks of an exclusive handful of motion picture talent.

The right to use Plaintiff's name and likeness is an extremely valuable commodity and

privilege not only because of Mr. Hoffman's stature as an actor, but because he does not knowingly permit commercial uses of his identity.[1] Since appearing in the film *The Graduate,* Mr. Hoffman has scrupulously guided and guarded the manner in which he has been shown to the public. Plaintiff maintains a strict policy of not endorsing commercial products for fear that he will be perceived in a negative light by his peers and motion picture industry executives, suggesting that his career is in decline and that he no longer has the business opportunities or the box office draw as before.

Defendant, ABC, Inc. (formerly known as Capital Cities/ABC, Inc.), is owned by the Walt Disney Company. ABC, Inc. owns 100% of Defendant, Los Angeles Magazine, Inc., the publisher of *Los Angeles Magazine.* While many officers and corporate directors of ABC, Inc. serve on the Board of Directors of Los Angeles Magazine, Inc., insufficient evidence was presented to the Court to hold Defendant, ABC, Inc., liable on the theories of ratification and/or alter ego. In fact, the operative pleadings are silent as to these theories.

At Page 118 of its March 1997 issue, *Los Angeles Magazine* published a photograph of Mr. Hoffman as he appeared to have appeared in the successful 1982 motion picture *Tootsie,* and through a process of technology employing computer imaging software, manipulated and altered the photograph to make it appear that Mr. Hoffman was wearing what appeared to be a contemporary silk gown designed by Richard Tyler and high-heel shoes designed by Ralph Lauren. Page 118 also contained the following text: "Dustin Hoffman isn't a drag in a butter-colored silk gown by Richard Tyler and Ralph Lauren heels."

Mr. Hoffman's photograph and name appeared in conjunction with an article entitled, "Grand Illusions," published on Pages 104 through 119 of the March 1997 issue of *Los Angeles Magazine.* The magazine article used computer technology to merge famous still photographs of famous actors/actresses, many of whom are now deceased, from classic films with photographs of body models wearing spring 1997 fashions identifying the designers of the articles of clothing used in the cannibalized photographs. Many of the articles of clothing used in the magazine article were designed by designers who were major advertisers in *Los Angeles Magazine* at the time of publication. The "Grand Illusions" article references a "shopping guide" that provides price and store information for the clothing used in the magazine article on Page 147.

The photograph that is the subject of the present litigation used in the "Grand Illusions" article was, as stated before, a still from the film *Tootsie,* which starred Dustin Hoffman. The original still photograph depicted Mr. Hoffman entirely, in character, wearing a long red dress and standing in front of an American flag with the printed material, "What do you get when you cross a hopelessly straight starving actor with a dynamite red sequined dress?" and "You get America's hottest new actress." The new composite computer-generated photograph that appeared in the "Grand Illusions" article incorporated only Mr. Hoffman's face and head and the American flag from the original still photograph, and a new photograph of a male model's body clothed in the silk gown designed by Richard Tyler and high-heel shoes designed by Ralph Lauren.

On Page 7 of the magazine, a still photograph of Humphrey Bogart and Ingrid Bergman appeared with the caption: "ON THIS PAGE. Fashion photographed by Alberto Tolot. Digital composite by ZZYZX. See 'Shopping Guide' on Page 147 for details." Also contained on the same page was the following: "104 GRAND ILLUSIONS. By using state-of-the-art digital magic, we clothed some of cinema's most enduring icons in fashions by the hottest designers."

1. In 1966/67, prior to the making of the motion picture classic *The Graduate,* Mr. Hoffman did appear in a commercial for Volkswagen. In addition, in December of 1988, prior to the release of the movie *Rainman,* Mr. Hoffman consented to the use of his name and likeness in connection with a promotion for that picture which appeared in the December 1988 edition of GQ. In the January 1999 edition of *Harper's Bazaar,* Mr. Hoffman expressly consented to be photographed in the manner depicted with no commercial endorsement intended.

At Page 10 of the magazine, the Editor–in–Chief of the *Los Angeles Magazine* wrote: "... The movie stills in our refashioned spectacular, 'Grand Illusions' (Page 104), have appeared before—in fact, they're some of the most famous images in Hollywood history. But you've never seen them quite like this. Cary Grant, for example, is still ducking that pesky plane in *North by Northwest*, but now he is doing it as a runway model, wearing a suit from Moschino's spring collection."

"We know purists will be upset, but who could resist the opportunity to produce a 1997 fashion show with mannequins who have such classic looks?"

Defendant, Los Angeles Magazine, Inc., did not seek or obtain permission from Mr. Hoffman to use his name or likeness in the March 1997 issue of *Los Angeles Magazine* and, in particular, did not obtain Mr. Hoffman's consent to commercially endorse or "shill" for any fashion designer or advertiser or the magazine. Defendant, Los Angeles Magazine, Inc., did not seek or obtain the permission of Columbia Pictures to use any image from *Tootsie* in the March 1997 issue of *Los Angeles Magazine.*

Defendants, Los Angeles Magazine, Inc. and ABC, Inc., have contended throughout this litigation that Plaintiff's state claims are preempted by the Federal Copyright Act and that the holder of the copyright is the proper party. This Court finds Defendants' argument regarding preemption to be unavailing.

■ This Court finds that Section 301 of the Copyright Act imposes a two-part test for preemption. First, the work at issue "must come within the 'subject matter of copyright' as defined in sections 102 [2] and 103 [3] of the Copyright Act." *See Del Madera Properties v. Rhodes & Gardner, Inc.,* 820 F.2d 973, 976 (9th Cir.1987). Second, "the rights granted under state law must be 'equivalent to any of the exclusive rights

within the general scope of copyright as specified by Section 106 [4] [of the Copyright Act]'." *Id.* The second prong of *Del Madera* requires that "to survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights ... The state claim must have an 'extra element' which changes the nature of the action." *Id.* at 977 (citations omitted). With respect to each of the state law claims in the present case, it is evident that the preemption doctrine does not apply.

■ Plaintiff's right of publicity claims proceed under the theory that Defendants' computerized manipulation of the *Tootsie* image and Defendants' publication of that manipulated image amount to an unauthorized use of Plaintiff's name and likeness. Plaintiff argues that his right to protect the use of his own name and image is separate from the copyrighted interest of Columbia in the motion picture *Tootsie.* Thus, argues Plaintiff, the first prong of the *Del Madera* preemption test is not met in the present case. This Court agrees. Plaintiff's own likeness and name cannot seriously be argued to constitute a "work of authorship" within the meaning of 17 U.S.C. § 102. Thus, copyright preemption does not apply.

Michael Caruso, the Editor–in–Chief, was hired to raise the profile of *Los Angeles Magazine* and to draw attention to a periodical that had previously not received much attention. Mr. Caruso felt that it was his responsibility to "rev the magazine up to the volume of the city." One way to accomplish this was through the prominent use of celebrities in the magazine.

During Mr. Caruso's tenure, *Los Angeles Magazine* published semi-annual "fashion" pieces. In its March 1996 issue, *Los Angeles Magazine* featured Grammy-nominated singers who expressly gave their consent to model the clothes. In its October 1996 issue, Defendant used television comediennes who

---

**2.** Section 102 provides copyright protection for "original works of authorship fixed in any tangible medium of expression," including "literary work" and "pictorial, graphic, and sculptural works." 17 U.S.C. § 102.

**3.** Section 103 extends copyright protection to "compilations and derivative works" utilizing

material protected under Section 102. 17 U.S.C. § 103.

**4.** Section 106 identifies a copyright owner's "exclusive rights to do and to authorize" the reproduction, distribution, public performance and display of copyrighted works. 17 U.S.C. § 106.

also expressly consented to model the clothes. For its March 1997 issue, *Los Angeles Magazine* decided to use famous motion picture actors to model clothes, but it had no intention of paying the significant sums it would cost to obtain their consent.

Defendant, Los Angeles Magazine, Inc., was aware that celebrities are sensitive and particular regarding the manner in which they are depicted in photographs. Defendant, Los Angeles Magazine, Inc., did not want the celebrities they were going to use to be "upset" or "degraded" by the manner in which they were portrayed in the March 1997 issue of *Los Angeles Magazine.* Despite these purported concerns, Defendant, Los Angeles Magazine, Inc., made absolutely no effort to contact the celebrities to see if they would consent to being portrayed in clothes that they never actually wore. The reason permission was not sought is because Defendant, Los Angeles Magazine, Inc., knew, or should have known, that the celebrities either would not consent or, alternatively, would demand payment for the fair market value for the right to utilize their names and likenesses in this manner for commercial exploitation.

Defendant, Los Angeles Magazine, Inc., obtained the celebrity photographs used in the March 1997 issue from photo archive companies. One of the companies that supplied photographs for the article, the Motion Picture and Television Photo Archive, specifically included a provision in its contract with *Los Angeles Magazine* that prohibited the stills from being altered or digitized through the use of a computer. Defendant, Los Angeles Magazine, Inc., completely ignored this contractual restriction.

The Kobal Collection, another photo archive which provided stills to *Los Angeles Magazine* (including the *Tootsie* photo directly at issue in this case), had a provision in paragraph 8 of the terms and conditions of its contract stating that the photos it was loaning could not leave Defendant's possession. Defendant, Los Angeles Magazine, Inc., completely ignored this contractual restriction and physically sent the *Tootsie* photograph to ZZYZX Visual Systems, a digital imaging company, for the express purpose of creating the manipulated and doctored photograph.

Knowing that the supplying companies would not permit their photographs to be altered, Defendant, Los Angeles Magazine, Inc. concealed its true intention and represented that it wanted to use Mr. Hoffman's photo for an article on "Hollywood Fashion," leading the photograph supplier to believe that the magazine was preparing a review of costumes that had been depicted in famous films, rather than a series of computer-doctored images putting celebrities into designer clothes they never wore, in film or otherwise.

Plaintiff, Dustin Hoffman, has been damaged by Defendant, Los Angeles Magazine, Inc., for the unauthorized use of his name and likeness to endorse and promote articles of clothing designed by Richard Tyler and Ralph Lauren. In addition, Plaintiff, Mr. Hoffman, has been damaged by Defendant, Los Angeles Magazine, Inc., for the unauthorized use of his name and likeness as a "runway model."

 The fair market value of Plaintiff's damages is the value that a celebrity of Mr. Hoffman's reputation, appeal, talent and fame would bring in the open market for this type of one-time use in a publication in a regional magazine, in the Los Angeles market area. The Court has considered the following five (5) factors in making its award:

1. Stature of Plaintiff in the motion picture industry for the past thirty (30) years;

2. The first-time use of Mr. Hoffman's name and likeness in a non-movie promotional context;

3. Self-perception by Plaintiff of what impact the commercial use of Plaintiff's name and likeness would have on executives in the motion picture industry as being less of a box office draw;

4. Uniqueness of opportunity in the role and character Plaintiff had created in the motion picture *Tootsie;* and,

5. The fact that the periodical involved was a regional periodical in the home town of the motion picture industry.

After considering these five (5) factors, this Court finds the Fair Market Value of Plaintiff's name and likeness used for endorsement purposes to be $1,500,000.

■ The Court also finds that Plaintiff has established by clear and convincing evidence that Plaintiff is entitled to an award of punitive damages pursuant to California Civil Code Section 3294. The unauthorized use of Plaintiff's name and likeness to promote the interests of *Los Angeles Magazine* in the manner depicted by the evidence introduced during this trial crossed over the line between editorial content and advertising. The photographs were manipulated and cannibalized to such an extent that the celebrities were commercially exploited and were robbed of their dignity, professionalism and talent. To be blunt, the celebrities were violated by technology.

Allowing this type of deceptive conduct to continue under the guise of First Amendment protection would lead to further technological mischief. The First Amendment provides extremely broad protection but does not permit unbridled exploitive speech at the expense of Mr. Hoffman and his distinguished career.

TO THE EXTENT THAT ANY OF THE CONCLUSIONS OF LAW SET FORTH BELOW ARE DEEMED TO BE FINDINGS OF FACT, THEY SHALL BE CONSIDERED PART OF THIS SECTION.

## III

### CONCLUSIONS OF LAW

■ 1. Under the common law, the right of publicity protects a plaintiff from having his/her name and likeness appropriated for the defendant's advantage. "A common law cause of action for appropriation of name or likeness may be pleaded by alleging: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood v. Superior Court,* 149 Cal.App.3d 409, 417, 198 Cal. Rptr. 342 (1983).

■ 2. Defendant, Los Angeles Magazine, Inc.'s conduct violates Mr. Hoffman's common law right of publicity, because: (a) Defendant, Los Angeles Magazine, Inc., used Mr. Hoffman's name and likeness at Page 118 of the March 1997 issue of *Los Angeles Magazine;* (b) Defendant, Los Angeles Magazine, Inc., used Mr. Hoffman's name and likeness for its own advantage to sell magazines, advertise and promote designer clothing; (c) Defendant, Los Angeles Magazine, Inc., did not obtain Mr. Hoffman's consent to utilize his name or likeness in *Los Angeles Magazine;* and (d) Mr. Hoffman has suffered injury and damage to his property rights as a result of the unauthorized use of his name and likeness by Defendant, Los Angeles Magazine, Inc., in that he was unable to reap the commercial value or control the use to which his name and likeness were put. *See Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1103 (9th Cir.1992).

3. California Civil Code Section 3344 provides a remedy separate and distinct from the common law right of publicity. The right of publicity statute provides, in pertinent part:

Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise or goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent ... shall be liable for any damages sustained by the person or persons injured as a result thereof.

■ 4. Defendant, Los Angeles Magazine, Inc.'s conduct violates Mr. Hoffman's statutory right of publicity because: (a) Defendant, Los Angeles Magazine, Inc., knowingly used Mr. Hoffman's name and likeness; (b) Defendant, Los Angeles Magazine, Inc., used Mr. Hoffman's name and likeness on or in products, merchandise or goods, namely, *Los Angeles Magazine;* (c) Defendant, Los Angeles Magazine, Inc., used Mr. Hoffman's name and likeness for purposes of advertising or selling, or soliciting purchases of products, merchandise, or goods, namely, Richard Tyler gowns, Ralph Lauren shoes, and *Los Angeles Magazine;* (d) Defendant, Los An-

geles Magazine, Inc., utilized Mr. Hoffman's name and likeness without obtaining his prior consent; and (e) Mr. Hoffman has suffered injury and damage to his property rights as a result of the unauthorized use of his name and likeness by Defendant, Los Angeles Magazine, Inc., in that he was unable to reap the commercial value or control the use to which his name and likeness were put. *See Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1103 (9th Cir.1992).

5. Section 43 of the Lanham Act prohibits the use of any word, term, name, symbol or device which is likely to deceive and confuse consumers as to the association, sponsorship, or approval of goods by another person. 15 U.S.C. § 1125(a); *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1107 (9th Cir.1992). The Lanham Act has been frequently invoked in this Circuit where celebrities' identities have been used without their consent and in a manner which makes it appear that the celebrities are associated with, sponsoring or endorsing commercial activities when, in fact, they are not. *See White v. Samsung Electronics America, Inc.,* 971 F.2d 1395, 1399 (9th Cir. 1992); *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1106 (9th Cir.1992); *Abdul–Jabbar v. General Motors Corp.,* 85 F.3d 407, 410 (9th Cir.1996).

■ 6. Defendant, Los Angeles Magazine, Inc.'s conduct violates Section 43 of the Lanham Act because: (a) Defendant, Los Angeles Magazine, Inc., used Mr. Hoffman's name and likeness; (b) Defendant, Los Angeles Magazine, Inc., used Mr. Hoffman's name and likeness in a manner which was likely to confuse consumers as to whether Mr. Hoffman was associated with, sponsored, approved, or endorsed *Los Angeles Magazine* or the depiction of his image in *Los Angeles Magazine;* (c) Defendant, Los Angeles Magazine, Inc., used Mr. Hoffman's name and likeness in a manner which was likely to confuse consumers as to whether Mr. Hoffman was associated with, sponsored, approved, or endorsed *Los Angeles Magazine* or the designer clothes and shoes which he appears to be wearing in *Los Angeles Magazine;* and (d) Mr. Hoffman has suffered injury and damage as a result of the unauthorized use of his name and likeness by Defendant, Los Angeles Magazine, Inc., in that he was unable to reap the commercial value or control the use to which his name and likeness were put. *See Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1103 (9th Cir.1992).

7. Unfair competition is defined to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ..." California Business and Professions Code Section 17200. The California Supreme Court has repeatedly given the broadest possible definition to the term "unfair competition." *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 209, 197 Cal.Rptr. 783, 673 P.2d 660 (1983).

■ 8. Defendant, Los Angeles Magazine, Inc.'s conduct violates principles of unfair competition as codified in California Business and Professions Code Section 17200 *et seq.,* because: (a) Defendant, Los Angeles Magazine, Inc., used Mr. Hoffman's name and likeness; (b) Defendant, Los Angeles Magazine, Inc., used Mr. Hoffman's name and likeness in an unlawful, unfair, or fraudulent manner; (c) Defendant, Los Angeles Magazine, Inc., used Mr. Hoffman's name and likeness in a manner constituting unfair, deceptive, untrue or misleading advertising; and (d) Mr. Hoffman was injured and suffered damage as a result of Defendant, Los Angeles Magazine, Inc.'s conduct.

■ 9. Defendant, Los Angeles Magazine, Inc.'s First Amendment defense is unavailing. The First Amendment does not protect the exploitative commercial use of Mr. Hoffman's name and likeness. The *Los Angeles Magazine* article provided no commentary on fashion trends and no coordinated or unified view of current fashions. The article contains no statement that any particular style of clothes is in vogue, that any particular color is becoming popular, or that any type of fabric is attracting the attention of designers. It merely used randomly selected designer clothes to attract attention when "worn" by the computer-manipulated, involuntary, celebrity models. Moreover, the use of Mr. Hoffman's name and likeness was wholly unnecessary to deliver whatever mes-

sage Defendant, Los Angeles Magazine, Inc., claims the *Los Angeles Magazine* article contained.

■ 10. Defendant, Los Angeles Magazine, Inc.'s First Amendment defense is also unavailing because the First Amendment does not protect knowingly false speech. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *Los Angeles Magazine* fabricated an image of Dustin Hoffman using computer digitalization techniques, and then published that image knowing it was false. Defendant, Los Angeles Magazine, Inc., knew that Mr. Hoffman had never worn the designer clothes he was depicted as wearing, and that what they were showing was not even his body. Moreover, Defendant, Los Angeles Magazine, Inc., admitted that it intended to create the false impression in the minds of the public "that they were seeing Mr. Hoffman's body."

11. Defendant, Los Angeles Magazine, Inc.'s copyright preemption defense is unavailing. What Mr. Hoffman seeks to protect—his name, face and persona—are not "writings" or "works of authorship" that come within the subject matter of copyright. 17 U.S.C. § 301. Moreover, the rights that Mr. Hoffman seeks to protect are not "equivalent" to the rights protected by the Copyright Act. The claims asserted by Mr. Hoffman involve extra elements that are different in kind from those in a copyright infringement case. 17 U.S.C. § 301.

■ 12. Defendant, Los Angeles Magazine, Inc.'s "news" or "public affairs" defense to Mr. Hoffman's statutory right of publicity claim does not apply. California Civil Code § 3344(d). The Section 3344(d) exemption to California's statutory right of publicity does not apply when a party uses the name or likeness of another in a knowingly false manner. *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 425, 198 Cal.Rptr. 342 (1983). Defendant, Los Angeles Magazine, Inc., knew that Mr. Hoffman had never worn the clothes he was depicted as wearing, and that what they were showing was not even his body.

13. Defendant, Los Angeles Magazine, Inc.'s "news" or "public affairs" defense also does not apply because the *Los Angeles Magazine* article is not really a presentation of fashion news or affairs, in that the designer-identified clothes selected for the article were not unified by, or representative of, any particular theme or point of view about fashion. The use of Mr. Hoffman's famous face bears no reasonable (or other) relationship to the fashions themselves, but only serves to attract attention to the magazine. The article does not even constitute "news" about Mr. Hoffman's clothing preferences because Mr. Hoffman never wore those designer clothes.

14. Defendant, Los Angeles Magazine, Inc.'s "news" or "public affairs" defense does not apply because even in the case of a bona fide and traditional news or public affairs report, the right of publicity permits the use of a person's likeness only to the limited extent reasonably required to convey the news to the public. *See Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) (holding that television news broadcast of plaintiff's entire human cannonball act violated plaintiff's right of publicity). In this case, *no* part of Mr. Hoffman's likeness was reasonably required to convey what Defendant, Los Angeles Magazine, Inc., claims was the newsworthy aspect of its article.

■ 15. Defendant, Los Angeles Magazine, Inc.'s "fair use" defense under the Lanham Act is unavailing. The use of Mr. Hoffman's name and likeness in *Los Angeles Magazine* was not merely descriptive. Rather, the use suggested Mr. Hoffman's sponsorship and endorsement of *Los Angeles Magazine* and the designer clothes that he appeared to be wearing in the photograph.

16. In connection with each of his four claims, Mr. Hoffman is entitled to compensatory damages in the amount of $1,500,000.00, which represents the fair market value of the right to utilize Mr. Hoffman's name and likeness in the manner in which it was used by *Los Angeles Magazine*.

17. Mr. Hoffman is entitled to punitive damages in an amount to be fixed by the Court after presentation of additional evidence on the ground that Defendant, Los

Angeles Magazine, Inc.'s unauthorized use of his name and likeness was wilful and was done in conscious disregard of Mr. Hoffman's rights.

18. Mr. Hoffman is entitled to an award of attorney's fees in an amount to be fixed by the Court after presentation of additional evidence pursuant to California Civil Code Section 3344(a) and Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

TO THE EXTENT THAT ANY OF THE FINDINGS OF FACT ABOVE ARE DEEMED TO BE CONCLUSIONS OF LAW, THEY SHALL BE CONSIDERED PART OF THIS SECTION.