Harold Baer, J.
This is a motion to dismiss the complaint which ¡seeks substantial damages under sections 50 and 51 of the Civil Rights Law. Plaintiff demands $250,000 in compensatory damages and $2,000,000 in punitive damages.
The defendant Time Incorporated publishes Sports Illustrated. In January, 1969, Sports Illustrated published photographs of the plaintiff. These photographs were admittedly newsworthy *532 as plaintiff was the star quarterback of the ££ Jets ” when they defeated thé ££ Colts ” in the Super Bowl. The gravamen of the plaintiff’s complaint is that the magazine, in its advertising campaign during the latter half of 1972, used photographs in 10 advertisements to promote subscriptions. He .demands damages for violation of his right of privacy and the wrongful use of his photograph without his written consent (Civil Rights Law, §§ 50, 51).
It is apparent from a reading of the complaint that plaintiff seeks damages, not for violation of his right of privacy but because he was deprived of substantial income from a £ £ property ” right. He earns substantial income for indorsement of many products. The contention is that this defendant should not be permitted to use his name or photograph without his written consent and without remuneration to him. Plaintiff states that in 1972 his commercial indorsements brought him income ° in excess of several hundred thousand dollars.” ££ His grievance is not the invasion of his ‘ privacy ’• — privacy is the one thing he did not want, or need, in his occupation.” (Concurring opn., Desmond, J. in Gautier v. Pro-Football, 304 N. Y. 354, 361.) In that case it was pointed out that “ claims based on use of a name or a picture for ‘ advertising purposes ’ * ' * * have received much more liberal treatment than those grounded on use £ for purposes of trade’.” (Gautier v. Pro-Football, 278 App. Div. 431, 434.)
In connection with advertising, the courts of this State have held that incidental use of a name or likeness is not in contravention of the statute (Merle v. Sociological Research Film Corp., 166 App. Div. 376; Fleischer v. W. P. I. X., 30 Misc 2d 17; Stillman v. Paramount, 1 Misc 2d 108, mod. 2 A D 2d 18; Moglen v. Varsity Pajamas, 13 A D 2d 114; Humiston v. Universal Film Mfg. Co., 189 App. Div. 467; cf. Sidis v. F. R. Pub. Corp., 113 F. 2d 806, 810, cert. den. 311 U. S. 711; Booth v. Curtis Pub. Co., 15 A D 2d 343, affd. 11 N Y 2d 907; Hofstadter and Horowitz, The Right of Privacy, p. 212 et seq.). It is the Booth case (supra), on which defendant mainly relies. In that ease, Holiday magazine had published a news article about a resort in the West Indies, accompanied by photographs of prominent guests. The plaintiff, Shirley Booth, the well-known actress, was photographed without objection, her picture appeared in the magazine and was republished six months later as part of an advertisement for Holiday. The Appellate Division held that there is no violation of the statute if the name and photograph are limited to establishing the news content and *533 quality of the media (p. 350): “ Consequently, it suffices here that so long ,as the reproduction was used to illustrate the quality and content of the periodical in which it originally appeared, the statute was not violated, albeit the reproduction appeared in other media for purposes of advertising the periodical.” This was the extreme limit of 1 ‘ incidental use ’ ’ and predicated upon the theory that the statute was not violated by a true and fair presentation in the news or from “ incidental advertising ” of the news medium in which she was properly and fairly presented.
There was a strong dissenting opinion by Justice Eager (supra, p. 353) based on the case of Flores v. Mosler Safe Co. (7 N Y 2d 276). However, as pointed out by.Justice Bbeitel (now Chief Judge of the Court of Appeals), the Flores case involved the advertising for sale of defendant’s products. It was a use for trade purposes and a classic example of collateral use. It was not a use incidental to the dissemination of news. The Booth decision {supra) emphasizes that the statute should be interpreted realistically, giving effect to the purpose as well as the language of the statute (Booth v. Curtis Pub. Co., supra, p. 347; Humiston v. Universal Film Mfg. Co., 189 App. Div. 467, supra; Dellesandro v. Holt & Co., 4 A D 2d 470; Oma v. Hillman Periodicals, 281 App. Div. 240; Wallach v. Bachrach, 192 Misc. 979, affd. 274 App. Div. 919; Koussevitzky v. Allen, Towne & Heath, 188 Misc. 479, 485, affd. 272 App. Div. 759; cf. Sidis v. F. R. Pub. Corp., 113 F. 2d 806, cert. den. 311 U. S. 711, supra).
This plaintiff raises the point that the defendant’s advertisement was not an incidental use but became a collateral use with the passing of time, the make-up of the advertisements, the prominent use of plaintiff’s name, the superimposed wording and the accompanying copy. He insists that these raise questions of fact that preclude summary judgment.
Photographs of Joe Namath appeared many times on the cover and in stories published by the defendant from July, 1965 through October, 1972. He admits that these were newsworthy and does not object to them. He does object to the use of his name and likeness in promotional material between September and December, 1972. In the defendant’s promotional material, plaintiff’s photograph was printed adjacent to a subscription application for Sports Illustrated. In most instances promotional material appeared alongside or below his picture. Magazines, popular with the male reader, included the words, “ How to get Close to Joe Namath”. In the publica *534 tions read mostly by female subscribers, the inscription was, “The man you love loves Joe Namath ”, Plaintiff intimates that it may have been unobjectionable to him if they had substituted the word “ football ” where his name appeared. There is nothing degrading, derogatory or untruthful about the copy. The plaintiff does not doubt his popularity or newsworthiness or that .the statement was fair comment. Admittedly, it was used to stimulate subscriptions but this is permissible (Rand v. Hearst Corp., 31 A D 2d 406, affd. 26 N Y 2d 806), and, see, Booth v. Curtis Pub. Co., 15 A D 2d 343, 349, supra):
‘ ‘ It stands to reason that a publication can best prove its worth and illustrate its content by submission of complete copies of or extraction from past editions. Nor would it suffice to show stability of quality merely to utilize for that purpose a current issue. Moreover, the widespread usage over the years of reproducing extracts from the covers and internal pages of out-of-issue periodicals of personal matter relating to all sorts of news figures, of public or private stature, is ample recognition that the usage has not violated the sensibilities of the community or the purport of the statute * * #
“To be sure, Holiday’s subsequent republication of Miss Booth’s picture was, in motivation, sheer advertising and. solicitation. This alone is not determinative of the question so long as the law accords an exempt status to incidental advertising of the news medium itself. ’ ’ (Emphasis supplied.)
The constitutionality of the New York statute has been under scrutiny. The realistic interpretation by the New York courts has avoided conflict with the First Amendment of the Constitution.
“ The appellant argues that the statute should be declared unconstitutional on its face if construed by the New York courts to impose liability without proof of knowing or reckless falsity. Such a declaration would not be warranted even if it were entirely clear that this had previously been the view of the New York courts. The New York Court of Appeals, as the Spahn* opinion demonstrates, has been assiduous in construing the statute to avoid invasion of the constitutional protections -of speech and press.
* ‘ ‘ That [books, newspapers and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment.’ Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495, 501-502 ”. (Time, Inc. v. Hill, 385 U. S. 397.)
*535 It is understandable that plaintiff desires payment for the use of his name and likeness in .advertisements for the sale of publications in which he has appeared as newsworthy just as he is paid for collateral indorsement of commercial products. This he cannot accomplish under the existing law of our State and Nation. Athletic prowess is much admired and well paid in this country. It is commendable that freedom of speech and the press under the First Amendment transcends the right to privacy. This is so particularly when a petitioner seeks remuneration for what is basically a property right — not a right to privacy.
The motion to dismiss the complaint is granted.

 Spahn v. Julian, Messner, Inc. (18 N Y 2d 324).