**Kareem ABDUL–JABBAR, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION; Leo Burnett Company, Inc., Defendants–Appellees.**

No. 94–55597.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 1995.

Decided Feb. 8, 1996.

As Amended on Denial of Rehearing and Rehearing En Banc May 23, 1996.

Ronald L. Johnston and Cynthia S. Arato, Blanc, Williams, Johnston & Kronstadt, Los Angeles, California, and David M. Rosman,

Los Angeles, California, for plaintiff-appellant.

Amy D. Hogue and Michael B. Garfinkel, Pillsbury, Madison & Sutro, Los Angeles, California, for defendants-appellees.

Before: T.G. NELSON and KLEINFELD, Circuit Judges, and LEGGE,* District Judge.

T.G. NELSON, Circuit Judge:

Former basketball star Kareem Abdul-Jabbar appeals the district court's summary judgment in favor of General Motors Corporation ("GMC") and its advertising agency, Leo Burnett Co., in his action alleging violations of the Lanham Act, 15 U.S.C. § 1125(a), and California's statutory and common law right of publicity. Abdul-Jabbar argues that GMC violated his trademark and publicity rights by using his former name, Lew Alcindor, without his consent, in a television commercial aired during the 1993 NCAA men's basketball tournament. The district court based its judgment on all causes of action largely on its findings that Abdul-Jabbar had abandoned the name "Lew Alcindor," and that GMC's use of the name could not be construed as an endorsement of its product by Abdul-Jabbar. Having jurisdiction pursuant to 28 U.S.C. § 1291, we reverse and remand for trial.

## FACTS AND PROCEDURAL HISTORY

This dispute concerns a GMC television commercial aired during the 1993 NCAA men's basketball tournament. The record includes a videotape of the spot, which plays as follows: A disembodied voice asks, "How 'bout some trivia?" This question is followed by the appearance of a screen bearing the printed words, "You're Talking to the Champ." The voice then asks, "Who holds the record for being voted the most outstanding player of this tournament?" In the screen appear the printed words, "Lew Alcindor, UCLA, '67, '68, '69." Next, the voice asks, "Has any car made the 'Consumer Digest's Best Buy' list more than once? [and responds:] The Oldsmobile Eighty-Eight has." A seven-second film clip of the automobile, with its price, follows. During the clip, the voice says, "In fact, it's made that list three years in a row. And now you can get this Eighty-Eight special edition for just $18,995." At the end of the clip, a message appears in print on the screen: "A Definite First Round Pick," accompanied by the voice saying, "it's your money." A final printed message appears: "Demand Better, 88 by Oldsmobile."

The following facts are undisputed. Kareem Abdul-Jabbar was named Ferdinand Lewis ("Lew") Alcindor at birth, and played basketball under that name throughout his college career and into his early years in the National Basketball Association ("NBA"). While in college, he converted to Islam and began to use the Muslim name "Kareem Abdul-Jabbar" among friends. Several years later, in 1971, he opted to record the name "Kareem Abdul-Jabbar" under an Illinois name recordation statute, and thereafter played basketball and endorsed products under that name.[1] He has not used the name "Lew Alcindor" for commercial purposes in over ten years.

GMC did not obtain Abdul-Jabbar's consent, nor did it pay him, to use his former name in the commercial described above. When Abdul-Jabbar complained to GMC about the commercial, the company promptly withdrew the ad. The ad aired about five or six times in March 1993 prior to its withdrawal. The parties dispute whether Abdul-Jabbar abandoned the name Lew Alcindor and whether the ad could be construed as an

---

* Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation.

1. The record judgment read that "said petitioner's name be, and the same is hereby changed from FERDINAND LEWIS ALCINDOR to KAREEM ABDUL-JABBAR by which said last-mentioned name shall be hereafter known and called." Illinois' name recordation laws, like California's, are permissive. *See Reinken v. Reinken*, 351 Ill. 409, 184 N.E. 639, 640 (1933); *In re Ritchie*, 159 Cal.App.3d 1070, 206 Cal.Rptr. 239, 240 (1984).

endorsement by Abdul–Jabbar of the 88 Oldsmobile.

Abdul–Jabbar brought suit in federal district court in May 1993, alleging claims under the Lanham Act and California's statutory and common law rights of publicity. The district court held a hearing on March 14, 1994. During the hearing, incorporated by reference into the order of summary judgment, the district court announced its "tentative finding that plaintiff has abandoned the name Lew Alcindor, and has abandoned the right to protect that name, and the right to assert any other rights that flow from his having had that name at one time in the past." This finding forms the basis for the district court's decision to grant summary judgment in favor of GMC on both the Lanham Act and the state law causes of action.[2] Abdul–Jabbar timely appealed.

## ANALYSIS

■■■ A grant of summary judgment is reviewed *de novo. Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. *Id.;* Fed.R.Civ.P. 56(c). We are not to weigh the evidence or determine the truth of the matter, but only to determine whether there is a genuine issue for trial. *Jesinger,* 24 F.3d at 1130.

## I

*The Lanham Act*

■■ "[A]n express purpose of the Lanham Act is to protect commercial parties against

unfair competition." *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1108 (9th Cir.1992). In *Waits,* we held as a matter of first impression that false endorsement claims are properly cognizable under section 43(a), 15 U.S.C. § 1125(a), of the Lanham Act. *Id.* at 1107. "Section 43(a) [as amended in 1988] ... expressly prohibits, *inter alia,* the use of any symbol or device which is likely to deceive consumers as to the association, sponsorship, or approval of goods or services by another person." *Id.*[3] Accordingly, we held actionable:

> [a] false endorsement claim based on the unauthorized use of a celebrity's identity ... [which] alleges the misuse of a trademark, i.e., a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product.

*Id.* at 1110. Abdul–Jabbar contends that GMC's unauthorized use of his birth name, Lew Alcindor, was likely to confuse consumers as to his endorsement of the Olds 88, and thus violates the Lanham Act.

GMC offers two defenses in response to this claim: 1) Abdul–Jabbar lost his rights to the name Lew Alcindor when he "abandoned" it; and 2) GMC's use of the name Lew Alcindor was a nominative fair use which is not subject to the protection of the Lanham Act. The district court held both defenses applicable.

*a) Abandonment under the Lanham Act*

While the district court found that there was no dispute as to GMC's failure to seek or

---

**2.** The district court did not distinguish between defendants GMC and Burnett, but assumed for purposes of the summary judgment motion that "if one is liable, both are liable; if one is entitled to the grant of the motion, both are entitled to it."

**3.** Section 43(a) states:

> (1) Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by the act.

> 15 U.S.C. § 1125(a) (1992).

obtain Abdul–Jabbar's consent to use his former name in its commercial, and that "on its face, the Lanham Act applies," it held that GMC was entitled to summary judgment on the basis of its finding that Abdul–Jabbar had abandoned his former name through nonuse under the Lanham Act. Title 15 U.S.C. § 1127 (1992) provides in pertinent part:

> A mark shall be deemed to be "abandoned" when either of the following occurs:

> (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of that mark made in the ordinary course of trade, and not merely to reserve a right in a mark.

> (2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become ... generic....

■ Once created, a prima facie case of abandonment may be rebutted by showing valid reasons for nonuse or lack of intent to abandon the mark. *Star–Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1396 (9th Cir.1985).[4] Because Abdul–Jabbar acknowledged that he had not used the name Lew Alcindor in over ten years, and because the district court found that plaintiff's proffered religious reasons for nonuse were not applicable,[5] the court held that Abdul–Jabbar had in effect abandoned the name.

**4.** In some circuits, a showing of nonuse shifts the burden of persuasion to the trademark owner to show intent to resume; in others, including the Ninth, Second and Seventh, prima facie abandonment creates only a rebuttable presumption of abandonment.

**5.** We need not decide whether Abdul–Jabbar's proffered reasons for non-use of his birth name would serve to rebut a prima facie case of abandonment. Abdul–Jabbar argues that the district court's abandonment ruling substantially burdens his First Amendment right to free exercise of religion. The gist of this argument is that by holding that one loses rights to his given name on adopting a new name for religious purposes, the court puts pressure on a religious believer to

■ Trademark law withdraws its protection from a mark that has become generic and deems it available for general use. Given that

> the primary cost of recognizing property rights in trademarks is the removal of words from (or perhaps non-entrance into) our language, ... the holder of a trademark will be denied protection if it is (or becomes) generic, i.e., if it does not relate exclusively to the trademark owner's product.

*New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 306 (9th Cir.1992). Similarly, the law ceases to protect the owner of an abandoned mark. Rather than countenancing the "removal" or retirement of the abandoned mark from commercial speech, trademark law allows it to be used by another. Accordingly, courts have held that an unused mark may not be held in abeyance by its original owner. *See, e.g., La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1272 (2d Cir.1974).[6]

■ While the Lanham Act has been applied to cases alleging appropriation of a celebrity's identity, the abandonment defense has never to our knowledge been applied to a person's name or identity. We decline to stretch the federal law of trademark to encompass such a defense. One's birth name is an integral part of one's identity; it is not bestowed for commercial purposes, nor is it "kept alive" through commercial use. A proper name thus cannot be deemed "abandoned" throughout its possessor's life, despite his failure to use it, or continue to use it, commercially.

"modify his behavior and violate his beliefs." *See Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 832, 109 S.Ct. 1514, 1516, 103 L.Ed.2d 914 (1989). Because we hold GMC failed to establish a prima facie case of abandonment under the Lanham Act, we do not reach or resolve this argument.

**6.** GMC's reliance on *Major League Baseball Properties, Inc. v. Sed Non Olet Denarius, Ltd.*, 817 F.Supp. 1103 (S.D.N.Y.1993), *vacated pursuant to settlement*, 859 F.Supp. 80 (S.D.N.Y.1994), is inapposite. Aside from the fact that a vacated case is poor authority, we observe that, unlike the case at bar, *Major League* was decided after full consideration of the evidence at a trial on the merits.

■ In other words, an individual's given name, unlike a trademark, has a life and a significance quite apart from the commercial realm. Use or nonuse of the name for commercial purposes does not dispel that significance. An individual's decision to use a name other than the birth name—whether the decision rests on religious, marital, or other personal considerations—does not therefore imply intent to set aside the birth name, or the identity associated with that name.

■ While the issue of whether GMC's use of the name Lew Alcindor constituted an endorsement of its product is far from clear, we hold that GMC cannot rely on abandonment as a defense to Abdul–Jabbar's Lanham Act claim.

### b) Lanham Act "fair use" doctrine

The district court cited the "fair use" defense, 15 U.S.C. § 1115(b)(4), as an alternative ground for dismissal of plaintiff's Lanham Act claim. We discussed this defense in *New Kids,* where we held that the use by two newspapers of the "New Kids" name to conduct phone-in polls measuring the group's popularity was a nominative or non-trademark "fair use" of the name not subject to protection under the Lanham Act. 971 F.2d at 306–09.

"[T]rademark law recognizes a defense where the mark is used only 'to describe the goods or services of [a] party, or their geographic origin.'" *Id.* at 306; (quoting 15 U.S.C. § 1115(b)(4)). We cited the example of a Volkswagen repair shop which used the name "Volkswagen" in the sign advertising its business. *Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350, 352 (9th Cir. 1969). There, we had recognized that it "'would be difficult, if not impossible, ... to avoid altogether the use of the word "Volkswagen" or its abbreviation "VW" ... [to] signify appellant's cars.' ... Therefore, his use of the Volkswagen trademark was not an infringing use." *Id.* at 307 (quoting *Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350, 352 (9th Cir.1969)).

We explained that "[c]ases like these are best understood as involving a non-trademark use of a mark—a use to which the infringement laws simply do not apply." *Id.*

[W]e may generalize a class of cases where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one. Such *nominative use* of a mark—where the only word reasonably available to describe a particular thing is pressed into service—lies outside the strictures of trademark law: Because it does not implicate the source-identification function that is the purpose of the trademark, it does not constitute unfair competition; such use is fair because it does not imply sponsorship or endorsement by the trademark holder.

*Id.* at 307–08.

*New Kids* was not the classic fair use case because the New Kids trademark was being used not to describe the defendant's own product (newspapers), but to describe the plaintiff's product (rock band). *Id.* at 308. However, we held that in such cases, a commercial user is nevertheless entitled to the nominative fair use defense if it meets three requirements:

First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Id.* (footnotes omitted). Because 1) the New Kids rock band could not be referenced without using its name; and 2) the newspapers used the name only to the extent necessary to identify them; and 3) nothing in the newspaper announcements implied sponsorship or endorsement by the New Kids, we held that the papers were entitled to the nominative fair use defense. *Id.* at 308–10.

■ The district court here found that GMC met the three *New Kids* requirements as a matter of law. We conclude, however, that there was a genuine issue of fact as to the third requirement, implied endorsement or sponsorship. Like the newspapers in *New Kids,* General Motors could not refer to

plaintiff without using his name, and it used no more than was necessary to refer to him. Also, analogously to the newspapers in *New Kids* asking their readers which New Kid was the best, sexiest, etc., the defendant was selling something, newspapers or cars, different from the product the plaintiff was selling, and their products could not be confused.

██ The distinction between this case and *New Kids* is that use of celebrity endorsements in television commercials is so well established by commercial custom that a jury might find an implied endorsement in General Motors' use of the celebrity's name in a commercial, which would not inhere in a newspaper poll. Newspapers and magazines commonly use celebrities' names and photographs without making endorsement contracts, so the public does not infer an endorsement agreement from the use. Many people may assume that when a celebrity's name is used in a television commercial, the celebrity endorses the product advertised. Likelihood of confusion as to endorsement is therefore a question for the jury. *White v. Samsung Elec. Am., Inc.*, 971 F.2d 1395, 1400–01 (9th Cir.1992) (holding that use of a robot dressed and posed like Vanna White next to a "Wheel of Fortune" set raised sufficient question of fact as to endorsement under the Lanham Act to preclude summary judgment), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993).

Had GMC limited itself to the "trivia" portion of its ad, GMC could likely defend the reference to Lew Alcindor as a nominative fair use. But by using Alcindor's record to make a claim for its car—like the basketball star, the Olds 88 won an "award" three years in a row, and like the star, the car is a "champ" and a "first round pick"—GMC has arguably attempted to "appropriate the cachet of one product for another," if not also to "capitalize on consumer confusion." *New Kids* at 308. We therefore hold that there is a question of fact as to whether GMC is entitled to a fair use defense.

### c) *Abdul–Jabbar's Lanham Act claim*

██ In considering celebrities' claims of violation under the Lanham Act, we have considered the following factors to determine whether a plaintiff has raised a genuine issue of material fact as to likelihood of confusion over endorsement: "(1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark." *White*, 971 F.2d at 1400.

The parties dispute the applicability of the factors. GMC concedes that the fifth factor, marketing channels, favors Abdul–Jabbar, but contests the rest. Because a jury could reasonably conclude that most of the factors weigh in plaintiff's favor, we hold that the question of whether Abdul–Jabbar's Lanham Act claim should succeed is a question for the jury.

## II

### *State law claims: Common Law and Statutory Rights of Privacy*

██ "California has long recognized a common law right of privacy ... [which includes protection against] appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court for Los Angeles County*, 149 Cal. App.3d 409, 198 Cal.Rptr. 342, 346 (1983) (citations omitted). The right to be protected against such appropriations is also referred to as the "right of publicity." *Id.*, 198 Cal.Rptr. at 347.

> The so-called right of publicity means in essence that the reaction of the public to name and likeness, which may be fortuitous or which may be managed and planned, endows the name and likeness of the person involved with commercially exploitable opportunities. The protection of name and likeness from unwarranted intrusion or exploitation is the heart of the law of privacy.

*Lugosi v. Universal Pictures*, 25 Cal.3d 813, 160 Cal.Rptr. 323, 329, 603 P.2d 425, 431 (1979).

██ As set out in *Eastwood*, a common law cause of action for appropriation of name or likeness may be pleaded by alleging "(1) the defendant's use of plaintiff's identity; (2)

the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." 198 Cal.Rptr. at 347.

We recently clarified in *White* that "the 'name or likeness' formulation referred to in *Eastwood* originated not as an element of the right of publicity cause of action, but as a description of the types of cases in which the cause of action had been recognized." 971 F.2d at 1397. Accordingly, we held that California's common law "right of publicity is not limited to the appropriation of name or likeness." *Id.* at 1398. The key issue is appropriation of the plaintiff's *identity.*

> It is not important *how* the defendant has appropriated the plaintiff's identity, but *whether* the defendant has done so.... A rule which says that the right of publicity can be infringed only through the use of nine different methods of appropriating identity merely challenges the clever advertising strategist to come up with the tenth.

*Id.* (internal citations omitted).

California's common law cause of action is complemented legislatively by Civil Code section 3344. As the *Eastwood* court explained, the statute is best understood as "complementing," rather than enacting, the common law cause of action, because the two are not identical. 198 Cal.Rptr. at 346. Section 3344(a) provides in pertinent part:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purchases of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent ... shall be liable for any damages sustained by the person ... injured as a result thereof.

Cal. Civil Code § 3344(a) (1971).

In addition to the common law elements, the statute requires two further allegations: 1) knowing use; and 2) a "direct connection ... between the use and the commercial purpose." 198 Cal.Rptr. at 347 (quotations omitted). Furthermore, unlike the common law cause of action, section 3344 is apparently limited to commercial appropriations. As the *Eastwood* court pointed out, however, "California law has not imposed any requirement that the unauthorized use or publication of a person's name or picture be suggestive of an endorsement or association with the injured person." *Id.* at 347. This caveat apparently applies to both the common law and statutory causes of action. *See id.* at 348 ("the appearance of an 'endorsement' is not the *sine qua non* of a claim for commercial appropriation.").

We have construed the statute's protection of "name, voice, signature, photograph, or likeness" more narrowly than the common law's protection of "identity." *See, e.g., White,* 971 F.2d at 1397 (holding plaintiff stated a cause of action under common law but not under section 3344 where likeness in question was robot impersonating celebrity); *Midler v. Ford Motor Co.,* 849 F.2d 460, 463 (9th Cir.1988) (holding common law but not statutory cause of action applicable to appropriation of singer's voice by voice-impersonator).

The district court ruled that GMC was entitled to summary judgment on both the statutory and common law causes of action. The court reasoned that section 3344 did not apply because: 1) Abdul–Jabbar had abandoned his former name; and 2) GMC did not "use" plaintiff's name because Abdul–Jabbar "did not [at the time of the ad] and does not have the name used." While the court found that GMC knowingly used the name Lew Alcindor for commercial purposes without obtaining plaintiff's consent, it concluded that GMC had not used *plaintiff's* name because he no longer bore that name.

The district court found that Abdul–Jabbar abandoned the name Lew Alcindor when he legally recorded his present name in 1971. The court acknowledged that "[w]e have no case law in California that abandonment is a defense [to § 3344], but as I would construe the law, it surely must be." The court further found, "regardless of abandonment," that because Abdul–Jabbar no longer uses the name Lew Alcindor, "there has been no use of plaintiff's name." Extrapolating from our holdings in *White* and *Midler* that, under section 3344, "use must be of actual voice or

actual likeness," the court concluded that "the actual name must be used in a name case, and ... our case does not involve the use of plaintiff's actual name."

The court dismissed the common law cause of action on similar grounds. The court referred to and distinguished *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831 (6th Cir.1983) (holding distributor's use of the phrase "Here's Johnny" actionable under Michigan common law, *see id.* at 837) and *Ali v. Playgirl, Inc.*, 447 F.Supp. 723 (S.D.N.Y. 1978) (holding magazine's publication of drawing of nude black man labelled "the greatest" entitled plaintiff to preliminary injunctive relief for violations of New York statutory and common law right of publicity, *see id.* at 728), on the grounds that "[o]ne cannot say that Lew Alcindor equals Kareem Abdul–Jabbar in anywhere near the same sense that 'Here's Johnny' equals Johnny Carson ... or the way 'the greatest' equalled Muhammed Ali, when [those cases were] tried." The court described the "essence" of the holdings in *Carson* and *Ali* to be "that the sobriquet or nickname must be in the most common present use so that it clearly identifies the person seeking recovery" and opined without reviewing any of the California cases that "[*Carson* and *Ali* ] might well come out the same under California common [law]."

We have frequently held that California's common law right of publicity protects celebrities from appropriations of their *identity* not strictly definable as "name or picture." *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, 827 (9th Cir.1974) (use of famous race car driver's well-known race car in televised cigarette ad sufficed to constitute an appropriation of his identity); *Midler*, 849 F.2d at 463 (use of sound-alike voice in radio ad supported a cause of action under California's common law right of publicity, though not under section 3344); *Waits*, 978 F.2d at 1098 (same); *White*, 971 F.2d at 1397–99 (use of robot dressed and posed like Vanna White next to a "Wheel of Fortune" set sufficiently identified her to state a cause of action under California common, but not statutory, law).

Neither the cases cited by the district court, nor the cases listed above stand for the proposition that the reference must be "in common, present use" under the statute or under California common law. Rather, they stand for the proposition that "identity" is a more flexible proposition and thus more permissive than the statutory "laundry list" of particular means of appropriation. *White*, 971 F.2d at 1398; *see also Carson*, 698 F.2d at 835 ("All that is required [under Michigan's common law right of publicity] is that the name clearly identify the wronged person.").

█ The district court's "common, present use" analysis appears to be a variation on its abandonment theme (*e.g.*, Abdul–Jabbar can only sue for use of his present name, because he has abandoned his former name). Abdul–Jabbar argues that abandonment cannot be a defense to appropriation because the right of publicity protects not only a celebrity's "sole right to exploit" his identity, *White*, 971 F.2d at 1399, but also his decision not to use his name or identity for commercial purposes. *See, e.g., Waits*, 978 F.2d 1093 (applying right of publicity protection to singer with moral and aesthetic objections to advertising). We agree.

Abdul–Jabbar cites *Price v. Hal Roach Studios, Inc.*, 400 F.Supp. 836, 846 (S.D.N.Y. 1975), wherein the court dismissed as "nonsensical" defendants' argument that Laurel and Hardy's failure to use their caricatures and imitations between 1940 and 1954 constituted abandonment: "It cannot be possible for Laurel and Hardy to lose rights in their own names and likenesses through 'nonuse.'" *Id.* at 846 (citing New York statutory law protecting persons from commercial exploitation by others and case) and *see id.* at n. 15 (citing *Grant v. Esquire*, 367 F.Supp. 876, 880 (S.D.N.Y.1973), for the proposition that nonuse of commercial value of name and likeness does not preclude against violation by others). We find this argument persuasive.

█ We hold that Abdul–Jabbar has alleged sufficient facts to state a claim under both California common law and section 3344. The statute's reference to "name or likeness" is not limited to present or current use. To the extent GMC's use of the plaintiff's birth name attracted television viewers' attention, GMC gained a commercial advantage. *See*

*Eastwood,* 198 Cal.Rptr. at 349 ("The first step toward selling a product or service is to attract the consumers' attention."). Whether or not Lew Alcindor "equals" Kareem Abdul–Jabbar in the sense that " 'Here's Johnny' equal[led] Johnny Carson," or " 'the greatest' equal[led] Muhammed Ali"—or the glamorously dressed robot equalled Vanna White—is a question for the jury. *See Waits,* 978 F.2d at 1102 (observing that a celebrity's renown is relative and "adequately reflected in the amount of damages recoverable").

■ As to injury, the district court opined that any "loss injury" was "de minimis," though it explicitly declined to rely on this in granting GMC summary judgment. *White* does not explicitly discuss injury, but notes that "the law protects the celebrity's sole right to exploit th[e] value" of her fame. 971 F.2d at 1399. Abdul–Jabbar alleges, and submits evidence to show, that he was injured economically because the ad will make it difficult for him to endorse other automobiles, and emotionally because people may be led to believe he has abandoned his current name and assume he has renounced his religion. These allegations suffice to support his action. Injury to a plaintiff's right of publicity is not limited to present or future economic loss, but "may induce humiliation, embarrassment, and mental distress." *Waits,* 978 F.2d at 1103 (quotations omitted).

GMC makes a final argument that its use of the name Lew Alcindor was "incidental" and therefore not actionable, citing *Namath v. Sports Illustrated,* 80 Misc.2d 531, 363 N.Y.S.2d 276 (1975), for the proposition that "newsworthy" items are privileged under right of publicity laws. The district court correctly rejected this line of reasoning as irrelevant. The *Namath* court held that Sports Illustrated was entitled under the First Amendment to use its own news stories to promote sales of its magazine. 363 N.Y.S.2d at 279–80.

A recent California case, *Montana v. San Jose Mercury News, Inc.,* 34 Cal.App.4th 790, 40 Cal.Rptr.2d 639 (1995), reaches a similar conclusion. The California Court of Appeal denied football star Joe Montana's claim that a newspaper's use of his image, taken from its Super Bowl cover story and sold in poster form, violated his section 3344

and common law right of publicity, holding that: 1) the posters represented newsworthy events, and 2) a newspaper has a constitutional right to promote itself by reproducing its news stories. *Id.* at 641–42. As the court noted, section 3344(d) provides that no prior consent is required for use of a "name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign." Cal.Civ.Code § 3344; *Montana,* 40 Cal.Rptr.2d at 640.

■ While Lew Alcindor's basketball record may be said to be "newsworthy," its use is not automatically privileged. GMC used the information in the context of an automobile advertisement, not in a news or sports account. Hence GMC is not protected by section 3344(d).

For the reasons set out above, we reverse the judgment of the district court and remand for trial on the claims alleging violation of the California common law right of publicity and section 3344, as well as the claims alleging violation of the Lanham Act.

REVERSED and REMANDED.