107 F.3d 878
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert TREZISE, Plaintiff-Appellant,
v.
AETNA LIFE & CASUALTY INSURANCE CORP., Defendant-Appellee.
 No. 95-56188.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 9, 1997.
Decided Feb. 26, 1997.
 
 1
 Before: FLETCHER and TROTT, Circuit Judges, and JENKINS, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Robert Trezise ("Trezise") filed a complaint against his former employer Aetna Casualty and Surety Company ("Aetna") in the Superior Court of California alleging, among other claims, age discrimination in violation of California's Fair Employment and Housing Act ("FEHA"). Cal.Gov't Code § 12941. Aetna removed the case to federal court based on diversity of citizenship, 28 U.S.C. § 1441(b), and moved for summary judgment. The district court granted Aetna's motion for summary judgment. Trezise timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 I.
 
 4
 Pursuant to a company-wide downsizing, Trezise's management position as Regional Agency Development Manager ("Regional ADM") was eliminated and he was laid off. At the time of the layoff, Trezise was almost 55 years old, had worked for Aetna for 33 years, and had always received favorable employee evaluations. A much younger Regional ADM, David Kuhn ("Kuhn"), with fewer years of experience with Aetna, was hired for the newly created managerial position which replaced both Trezise's and Kuhn's former positions. Trezise claims that the layoff, and subsequent failure to hire him into the new position, constitute age discrimination.
 
 
 5
 To rebut Trezise's allegations of age discrimination, Aetna came forth with a legitimate, nondiscriminatory reason for its decision. It produced evidence that Trezise was laid off because, pursuant to a company-wide reorganization, his position was eliminated. Aetna consolidated its 41 National Regions into 28 larger Districts. All of the 41 former Regional ADM positions were eliminated and replaced with 28 District Agency Development Manager ("District ADM") positions. Trezise's and Kuhn's Regions were consolidated into a single District, and these two former Regional ADMs were the only two candidates considered for the newly created District ADM position.
 
 
 6
 After a thorough evaluation procedure, Kuhn was found to be the more qualified of the two candidates. The process had several stages. First, Hylan Hubbard, the Vice-President of Agency Development in Aetna's Home Office, and the Home Office Agency Development staff, including Thomas Kubicki, rated the Regional ADMs according to four predetermined criteria which the Home Office Staff determined were necessary to successful performance as a District ADM: leadership, business and organization knowledge, communications skills, and teamwork. The ratings in each area were derived primarily from each candidate's most recent annual performance evaluation ("PDR"), which was regularly compiled by the candidate's direct supervisor in the field. The Home Office staff also considered their own personal contacts with, or perceptions of, the candidates. Hubbard then considered these ratings to compare the relative competencies of the candidates. Hubbard concluded, based on the four criteria, that Kuhn was the better qualified candidate. Hubbard conveyed his opinion to Barbara Courtney, the Southwest District Vice-President, for her consideration in making the final selection.
 
 
 7
 Courtney then discussed Trezise and Kuhn with fellow executives and managers. In these discussions, Courtney was given the impression that Kuhn was a superior candidate. Courtney directed a member of her staff to compile a Candidate Comparison Worksheet ("CCW"), which compared and contrasted all 11 criteria evaluated on Trezise's and Kuhn's most recent PDRs. Use of CCWs is standard policy at Aetna, and all managers receive training on how to compile and use CCWs. Because the CCW was based on each candidate's most recent PDR, it ultimately reflected the views of the candidates' direct supervisors. The CCW confirmed the information already compiled regarding the various competencies of Kuhn and Trezise. Kuhn's PDR scores were overall superior to those of Trezise. Finally, Courtney reviewed the condition of both candidates' Regions. Courtney concluded that during the prior 2 1/2 years that both Kuhn and Trezise served as Regional ADMs, Kuhn did a better job managing Aetna's agency relationships. Based on all of the information derived from this process, Courtney concluded that Kuhn was the better candidate for the position of Southwest District ADM.
 
 
 8
 In response to Aetna's evidence of a legitimate nondiscriminatory reason for the layoff and hire, Trezise argued that Aetna's selection process was pretextual. However, he failed to come forth with further evidence of actual discrimination or anything else that would support the claim that Aetna's process was a pretext for age discrimination.
 
 II.
 
 9
 A grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Bagdadi, 84 F.3d at 1197. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. Abdul-Jabbar v. General Motors Corp., 85 F.3d 407, 410 (9th Cir.1996). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996).
 
 
 10
 Because this is a diversity case raising California statutory claims, we look to the California courts' interpretation of FEHA. However, California courts have adopted the analysis applicable to ADEA claims in ruling on age discrimination under FEHA, Nesbit v. Pepsico, Inc., 994 F.2d 703, 704 (9th Cir.1993), and the standards of proof for ADEA claims are the same as those for Title VII. Ritter v. Hughes Aircraft Co., 58 F.3d 454, 456 (9th Cir.1995).
 
 III.
 
 11
 No one questions that Trezise made out a prima facie case and that Aetna articulated a legitimate non-discriminatory reason for choosing Kuhn over Trezise. According to Trezise, after the plaintiff in a discrimination case presents a prima facie case of discrimination and the employer comes forth with a nondiscriminatory reason for the employment decision, "then the matter is for the jury as to whom is to be believed." This is not so. Once the employer produces a legitimate nondiscriminatory reason for the employment action, the burden of production shifts back to the employee to show the employer's reason is pretextual. Wallis, 26 F.3d at 892 (after the employer comes forth with a nondiscriminatory reason, the employee plaintiff must then offer some "additional proof of age discrimination either direct, circumstantial, or statistical" to show that the employer's alleged reason is pretextual). "The plaintiff cannot carry this burden simply by restating the prima facie case and expressing an intent to challenge the credibility of the employer's witnesses on cross-examination. She must produce specific facts either directly evidencing discriminatory motive or showing that the employer's explanation is not credible." Lindahl v. Air France, 930 F.2d 1434, 1438 (9th Cir.1991). The plaintiff cannot "rely on generalizations. He must produce evidence of facts that either directly show a discriminatory motive or show that the [employer's] explanation for his [termination] is not credible." Warren, 58 F.3d at 443 (9th Cir.1995).
 
 IV.
 
 12
 Trezise argues that Aetna's selection process was pretextual because it failed to consider factors which are relevant to determine who would be a better District ADM, such as length of service, relative size or complexity of the candidate's Agency Development branches, and the fact that the PDRs were prepared by different individuals. He further argues that the people who prepared the PDRs should have been consulted directly during the selection process.
 
 
 13
 Trezise basically argues that Aetna should have considered factors which would have shown himself in a better light. However, "the question is not whether [Trezise] in the abstract had better qualifications than the other candidate[ ]. The question is whether the other candidate[ ] [is] more qualified with respect to the criteria that [Aetna] actually employ[ed]." Cotton v. City of Alameda, 812 F.2d 1245, 1249 (9th Cir.1987). The selection criteria themselves of course must be non-discriminatory. Trezise presents no such evidence but only claims that the evaluations were subjective.
 
 
 14
 The use of subjective employment criteria alone is not evidence of discriminatory intent. Sengupta v. Morrison-Knudsen Co. Inc., 804 F.2d 1072, 1075 (9th Cir.1986) (the "relevance [of subjective employment criteria] to proof of a discriminatory intent is weak.... Indeed, in many situations they are indispensable to the process of selection in which employers must engage."). Trezise failed to "amass any evidence indicating that [Aetna] used the subjective evaluation to mask unlawful and pretextual discrimination." Id. That Aetna's selection process was based largely upon subjective evaluations of Trezise and Kuhn does not create a genuine issue of fact as to whether Aetna's reasons for discharging Trezise were pretextual.
 
 
 15
 Finally, Trezise argues that because Kubicki testified during his deposition that he could not remember how the "leadership" score was calculated, "there was little or no factual basis for such a low score on the leadership issue." This is a mischaracterization of Kubicki's testimony. Kubicki simply said that he could not remember how the rankings were conducted because he left the home office one year earlier. He did not say there was no factual basis for the rankings. The failure of a single witness to recall how only one factor in one phase in a multi-phase selection process was calculated does not create a triable issue of material fact regarding whether this process was pretextual.
 
 V.
 
 16
 We are mindful that this case was disposed of at the summary judgment stage, but we conclude that Trezise failed to come forth with any evidence of intentional discrimination against him on the basis of his age that created a triable issue of fact. While Trezise conjectures that Aetna "would have to be blind and stupid not to recognize and consider the [ ] fact ... that Mr. Kuhn, at 31 years old, could look forward to a long future with the company while Mr. Trezise, at 55 years old, was planning to retire after another ten years ... in making their selection," he presented no evidence that this fact was a factor in determining who was more qualified for the position.
 
 CONCLUSION
 
 17
 Because Trezise failed to provide any evidence that Aetna intentionally discriminated or that it used its selection as a pretext, the district court did not err in granting summary judgment to Aetna.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Bruce S. Jenkins, Senior United States District Judge for the District of Utah, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3