Louise RAMS, an individual, and Alexander Flemming, an individual, Plaintiffs,

v.

DEF JAM RECORDINGS, INC., a New York corporation; Universal Music Group Recordings, Inc., a California corporation; Jeremih Felton, individually d/b/a "Jeremih"; Does 1-10, Inclusive; Mick Schultz Productions, a business entity of form unknown, Defendants.

15 Civ. 8671 (GBD)

United States District Court, S.D. New York.

Signed August 15, 2016

Emily Alexa Danchuk, Emily A. Danchuk, Esq., Falmouth, ME, Joseph E. Pelochino, Michael James O'Connor, Jr., Andrews Lagasse Branch and Bell LLP, San Diego, CA, Scott A. Burroughs, Stephen M. Doniger, Trevor William Barrett, Doniger Burroughs APC, Venice, CA, Scott Alan Burroughs, Doniger Law Firm, Culver City, CA, for Plaintiffs.

Linda M. Burrow, Alison Mackenzie, Julia Jill Bredrup, Caldwell Leslie and Proctor PC, Los Angeles, CA, Gary Philip Adelman, Sarah Michal Matz, Adelman Matz P.C., NY, NY, Kenneth D. Freundlich, Michael Jason Kaiser, Freundlich Law, Encino, CA, Adam J. Richards, O'Reilly Stoutenburg Richards LLP, New York, NY, Jeffrey Scott Humphrey, Humphrey Law, Santa Monica, CA, for Defendants.

## MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, United States District Judge:

Plaintiffs Louise Rams and Alexander Flemming filed this action on April 13, 2015 in the Central District of California against Defendants Def Jam Recordings, Inc. ("Def Jam"), Universal Music Group Recordings, Inc. ("UMG"), Jeremih Felton, Mick Schultz Productions, and Does 1-10 Inclusive (collectively "Defendants"). Plaintiffs' August 13, 2015 Second Amended Complaint, ("SAC," ECF No. 24), alleges that Defendants' use of Flemming's portrait of Rams constitutes federal primary, vicarious, and contributory copyright infringement, (SAC, ¶¶ 22-36), as well as a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202, et seq. (Id., ¶¶ 37-42.) Plaintiff Rams also brings a claim for misappropriation of likeness under California Civil Code § 3344 and California common law. (Id., ¶¶ 43-47.)

Defendant Felton moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) the Second Claim for Relief against him for secondary copyright in-

fringement. (Def. Felton's Mot. to Dismiss, ECF No. 72.) Felton also joins UMG's motion to dismiss the Fourth Claim for Relief for misappropriation of likeness (Def. Felton's Mem. in Supp. of Mot. to Dismiss ("Felton Mem."), ECF No 74, at 1; Def. UMG Recordings, Inc.'s Mot. to Dismiss, ECF No. 64; Def. UMG Recordings, Inc.'s Mem. in Supp. of Mot. to Dismiss ("UMG Mem."), ECF No. 65, at 1.)[1]

Felton's motion to dismiss Plaintiffs' Second Claim for Relief for secondary federal copyright infringement pursuant to Rule 12(b)(6) is DENIED. Defendants' motions to dismiss Plaintiffs' Fourth Claim for Relief for misappropriation of likeness under California common law and Civil Code § 3344 are also DENIED.

## I. FACTUAL BACKGROUND

Defendant Def Jam is a music recording label associated with Defendant UMG. (SAC, ¶¶ 6-7.) Defendant Felton is a "popular recording artist, producer, and entertainer," (*id.* ¶ 19), currently recording, distributing, and performing music under the stage name of "JEREMIH." (*Id.*, at 2.) Plaintiffs allege that the known Defendants do business within the state of California. (*Id.* ¶¶ 6-9.) Upon Plaintiffs' information and belief, "each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment," with full knowl-

edge of the other Defendants' conduct. (*Id.* ¶¶ 11, 24.)

Plaintiffs allege that Plaintiff Flemming, a resident of Denmark, is a professional photographer specializing in "striking and evocative portraiture." (SAC, at 2.) Plaintiffs further allege that Plaintiff Rams, another Denmark resident, is the subject of one of Flemming's published and copyrighted portraits (the "Subject Image"),[2] which Defendants used without Plaintiffs' authorization, (*id.; id.* ¶¶ 21-23, 44), on various marketing and advertising materials, including the album cover of Defendant Felton's hit single, "Don't Tell 'Em" and its remixes. (*Id.* ¶ 14.) Plaintiffs claim that Defendants had access to the Subject Image, which was on Flemming's websites, or through other authorized channels, including search engines or third-party online sources. (*Id.* ¶¶ 21-23.) Plaintiffs' allegations are based on a visual comparison of the Subject Image and samples of the "Don't Tell 'Em" singles covers, which Plaintiffs contend are "identical or substantially similar" in elements, composition, color, arrangement, subject, lighting, angle, and overall appearance. (*Id.* ¶ 15.) Additionally, Plaintiffs allege that Def Jam, UMG, and/or Felton knowingly "removed the 'AF' signature mark from the Subject Image" and "added a 'Def Jam recordings' signature mark to the Subject Image," (*id.* ¶¶ 17-18, 38-40), thereby "creating an infringing derivative work from the Subject Image." (*Id.* ¶¶ 26, 30.)

1. This Court ordered supplemental briefing prior to oral argument on this motion as to whether Danish law has an analogous right of publicity, and directed the parties to address, by way of example, § 18 of the Consolidated Danish Marketing Practices Act ("Danish MPA"). (*See* Defs.' Joint Supplemental Br. in Supp. of Mot. to Dismiss Fourth Cause of Action ("Suppl. Br."), ECF No. 94; Pls.' Supplemental Br. in Opp'n of Mot. to Dismiss Fourth Cause of Action ("Suppl. Opp'n"),

ECF No. 95; Defs.' Joint Supplemental Reply ("Suppl. Reply"), ECF No. 96.)

2. Plaintiffs allege that the Subject Image depicts Rams with her index finger perpendicular to her closed lips—a gesture commonly understood to mean "Shh, don't tell"—and provide comparisons to the covers of three versions of Defendant Felton's single. (SAC, ¶ 15.)

According to Plaintiffs, through Defendants' distribution of the alleged infringing works to the public, (*id.*), Defendants allegedly profited directly and indirectly from their infringing conduct, and would not have obtained those profits but for their infringement of Flemming's copyright in the Subject Image. (*Id.* ¶¶ 29, 35.) In the alternative,[3] Plaintiffs also allege that each Defendant "aided and abetted in and profited from the illegal reproduction and distribution of the Subject Image," while having "the right and ability to supervise the infringing conduct." (*Id.* ¶¶ 32, 33.)

Plaintiffs similarly allege that Rams, at no point, authorized any of the Defendants to use her likeness on the album covers and other marketing materials on the internet and social media. (*Id.* ¶¶ 16, 20.) According to Plaintiffs, each of the Defendants knowingly used Rams' likeness and photographs for purposes of "advertising or selling, or soliciting purchases of, Defendants', and each of their products, merchandise, goods, or services," including Felton's albums and services as a performing and recording artist, without her consent and in California. (*Id.* ¶¶ 6-8, 44.)

Plaintiffs seek injunctive relief against Defendants, their agents, and employees. (*Id.*, at 12-13.) Plaintiffs also seek compensation for losses and disgorgement of profits and other monetary advantages resulting from the alleged infringing conduct; costs; attorneys fees; prejudgment interest; as well as any other "just and proper" relief. (*Id.*) Additionally, Plaintiff Rams seeks punitive damages, if applicable, for the willful misappropriation of her likeness. (*Id.*)

## II. LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires pleading facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Thus, the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. The court then considers whether Plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.; see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 CIV. 6909, 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the non-moving party's favor. *See Ahmad v. Morgan Stanley & Co.*, 2 F.Supp.3d 491, 495 (S.D.N.Y.2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007)).

"In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to docu-

---

**3.** At the oral argument, (Oral Argument Tr. ("Tr."), at 66:3-12), Plaintiffs clarified the nature of their secondary infringement claims against Felton:

The Court: ... Are you looking for an alternative claim?
Mr. Burroughs: Yes, your Honor ... Under one or the other.

ments attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda,* 670 F.Supp.2d 264, 271 (S.D.N.Y.2009), *aff'd sub nom. Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund,* 761 F.3d 277 (2d Cir.2014) (quoting *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993)); *see also Hayes v. Coughlin,* No. 87 Civ. 7401, 1991 WL 220963, at *1 (S.D.N.Y. Oct. 16, 1991) ("Papers outside a complaint may be incorporated by reference into the complaint when such papers are referred to within the body of the complaint.").

## III. SECONDARY COPYRIGHT INFRINGEMENT CLAIMS AGAINST FELTON

Plaintiffs' Second Cause of Action alleges contributory and vicarious copyright infringement claims against all Defendants under the Copyright Act, 17 U.S.C. § 101, *et seq.* (*See* SAC ¶¶ 31-36.) With regard to Felton, Plaintiffs allege in the alternative that Felton participated in either the primary or secondary infringement of the Subject Image. (*Id.*) While neither UMG nor Felton seek dismissal of the primary copyright claim, Felton seeks to dismiss the secondary claims against him, arguing that "Plaintiffs have failed to allege any facts regarding Felton's purported indirect infringement." (*See* Felton Mem., at 5; Oral Arg. Tr., at 36:16-19.)

### A. Contributory Infringement

■■■■ "Contributory infringement liability is based upon the defendant's relationship to the direct infringement: if the defendant was implicated in the acts constituting the direct infringement, [he] may be held liable for contributory infringement." *Ez–Tixz, Inc. v. Hit–Tix, Inc.,* 919 F.Supp. 728, 732 (S.D.N.Y.1996). To state

a claim for contributory infringement, a plaintiff must allege facts that a defendant "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another . . . ." *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971).

■■■■ As to the first element of a contributory infringement claim, knowledge may be actual or constructive. *Arista Records LLC v. Usenet.com, Inc. ("Usenet.com"),* 633 F.Supp.2d 124, 154 (S.D.N.Y. 2009) (citing *Faulkner v. Nat'l Geographic Soc'y,* 211 F.Supp.2d 450, 474 (S.D.N.Y. 2002)). A defendant has constructive knowledge when he has reason to know of direct infringement. *Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir.2004) (internal citations omitted). However, "more than a generalized knowledge by the [defendant] of the possibility of infringement" is required. *Luvdarts, LLC v. AT & T Mobility, LLC,* 710 F.3d 1068, 1072 (9th Cir. 2013).

Here, Plaintiffs allege that "each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants," and that all Defendants have an "ongoing business relationship with one or more of the other Defendants." (SAC ¶¶ 11, 24.) Plaintiffs further allege these Defendants, including Felton, "actively participated in or subsequently ratified and adopted or both, each and all of the acts or conduct alleged," including the approval of the replacement of Flemming's watermark with the Def Jam watermark, as well as use of the altered Subject Image on the cover of "Don't Tell 'Em." (SAC ¶¶ 14-16). Drawing all reasonable inferences in favor of Plaintiffs, it is plausible that Felton, as the recording artist, whose work is distributed by UMG under the Def Jam label, would have reason to know of

the infringing use of the Subject Image on his own album cover. *See Blank Prods., Inc. v. Warner/Chappell Music, Inc.*, 11 Civ. 7927, 2013 WL 32806, at *3 (S.D.N.Y. Jan. 3, 2013).

 A plaintiff must also allege that a defendant induced, caused, or made a material contribution to the primary infringing activities to survive a motion to dismiss a contributory infringement claim. *See Arista Records LLC v. Lime Grp. LLC* ("*Lime Grp.*"), 784 F.Supp.2d 398, 432 (S.D.N.Y.2011) (citing *Gershwin*, 443 F.2d at 1162). Two types of activity lead to contributory liability: "(i) personal conduct that encourages or assists the infringement;" or "(ii) provision of machinery or goods that facilitate the infringement." *Faulkner*, 211 F.Supp.2d at 473 (internal citation omitted). Furthermore, any "authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." *Id.* "Advertising or otherwise promoting an infringing product or service may be sufficient to satisfy the material contribution prong" of a contributory infringement claim. *Id.* at 473–74; *see also Fahmy v. Live Nation Entm't Inc.*, 15 Civ. 1158, 2015 WL 3617040, at *8 (C.D.Cal. June 8, 2015).

 Here, the facts alleged fit only the first type of activity on which a claim may lie: personal conduct that encourages or assists the infringement. *See Faulkner*, 211 F.Supp.2d at 473. Plaintiffs allege that Felton, in concert with Def Jam or UMG, or both, "used and distributed images that are identical to, or substantially similar to, the Subject Image as an album cover in various marketing and advertising materials, and across various websites and social media platforms." (SAC ¶¶ 16, 25; Pl.'s Opp'n to Felton MTD ("Opp'n to Felton"), ECF No. 78, at 5.) Plaintiffs further allege that Felton is a popular recording artist,

producer, and entertainer, and that he currently records, distributes, and performs music—including his own album with the Subject Image as its cover. (SAC ¶ 19.) It is indeed reasonable to infer that to distribute and perform his music, Felton would actively promote his music, which includes the album whose cover is the Subject Image. *See Faulkner*, 211 F.Supp.2d at 473–74. At oral argument, Felton argued that this Court could not attribute ownership of the albums published under his name to him and that "the record company can actually do whatever they want" to the album cover. (Tr., at 33:14-18.) However, at the 12(b)(6) stage, this Court does not decide issues of fact, such as UMG's actual conduct, raised by Defendants outside of the SAC. *See Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

While Plaintiffs' factual allegations of contributory infringement may be thin, they sufficiently allege that Felton authorized and acted in concert with the other Defendants and/or their agents to infringe on the Subject Image. *See BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F.Supp.3d 342, 357 (S.D.N.Y.2014).

## B. Vicarious Infringement

 Unlike contributory liability, vicarious liability rests not on the defendant's relationship to the direct infringement but rather on the defendant's relationship to the direct infringer. Vicarious liability may exist "[w]hen the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials ... even in the absence of actual knowledge that the copyright monopoly is being impaired ...."

*Ez–Tixz, Inc.*, 919 F.Supp. at 732–33 (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)). "While knowledge—either constructive or actual—is a required element

of contributory copyright infringement, it is not required to state a claim for vicarious copyright infringement." *Premier Fabrics, Inc. v. Woodland Trading Inc.*, 42 F.Supp.3d 549, 555 (S.D.N.Y.2014) (internal citation omitted.) "[V]icarious liability may exist even if the third party was in no way directly involved in the actual copying." *Ez–Tixz, Inc.*, 919 F.Supp. at 733 (citing *Shapiro*, 316 F.2d at 307). Thus, to state a claim for vicarious infringement, a plaintiff need only allege that a defendant has declined to exercise the right and ability to supervise or control the infringing activity and enjoys a direct financial benefit from the infringing activity. *See Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913,930, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005) (citing *Shapiro*, 316 F.2d at 307); *Ellison*, 357 F.3d at 1076.

■■■ A party has control where it has "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Blank Prods., Inc.*, 2013 WL 32806, at *3 (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir.2007) (internal quotation marks omitted)). The Second Circuit has found that a defendant "need not have 'formal power to control' where a direct infringer 'depend[s] upon [the defendant] for direction.'" *Usenet.com*, 633 F.Supp.2d at 157 (quoting *Gershwin*, 443 F.2d at 1163).

■■■ As to the first element of vicarious infringement, Plaintiffs allege that Felton had "the right and ability to supervise the infringing conduct," including the replacement of Flemming's mark with the Def Jams mark, the use of the Subject Image on the cover of Felton's single album as "the primary cover art," and the promotion of Felton "across various personal and social media platforms." (SAC ¶¶ 25, 33.) Plaintiffs state a plausible claim that, as a recording artist, "Felton had the right and ability to supervise the selection of cover

artwork for his own 'Don't Tell 'Em' single." (Opp'n to Felton, at 3.) Indeed, as Plaintiffs note, the album single featuring the Subject Image "was marketed, published and distributed under Felton's own [stage] name[,]" JEREMIH. (*Id.* at 5.)

■■■ The second element of the vicarious infringement test requires showing a "causal relationship between the infringing activity and any financial benefit [the] defendant reaps . . . ." *Ellison*, 357 F.3d at 1079. "Financial benefit exists where the availability of infringing material 'acts as a draw for customers.'" *A & M Records, Inc. v. Napster Inc.* ("*Napster II*"), 239 F.3d 1004, 1023 (9th Cir.2001) (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263–64 (9th Cir.1996) (internal quotation marks omitted)). The financial benefit need not be tied directly to sales of the infringing goods, *Lime Grp.*, 784 F.Supp.2d at 435 (citing *Fonovisa*, 76 F.3d at 263), nor must it be substantial. *See Ellison*, 357 F.3d at 1079.

Here, Plaintiffs have sufficiently alleged that Felton benefitted financially from the infringing activity. (*See* SAC, ¶¶ 16, 19, 33.) Because the image of Rams with her index finger perpendicular to her closed lips is commonly understood to mean "Shh, don't tell," the image communicates the title of Felton's song, "Don't Tell 'Em." (*Id.* ¶¶ 15-17.) As the literal "face" of Felton's single, Flemming's portrait of Rams therefore plays a role in the song's, and therefore, Felton's marketability, reaping him direct financial benefits in the form of album sales. *See Forties B LLC v. Am. W. Satellite, Inc.*, 725 F.Supp.2d 428, 437 (S.D.N.Y. 2010) (quoting *Shapiro*, 316 F.2d at 307–8). Given these allegations, Plaintiffs have stated a plausible claim that Felton has committed vicarious copyright infringement.

Felton's motion to dismiss the secondary federal copyright infringement claims against him is therefore DENIED.

## IV. RAMS'S RIGHT OF PUBLICITY CLAIM

Plaintiffs' Fourth Claim for Relief is a misappropriation of likeness claim under California common law and Civil Code § 3344. (*See* SAC ¶¶ 43-47.) Specifically, Rams alleges that all Defendants "knowingly used [her] likeness and photograph for purposes of advertising or selling, or soliciting purchases of, Defendants', and each of their, products, merchandise, goods, or services" without her consent. (*See id.* ¶¶ 44-45.)

### A. California's Choice of Law Rules: Governmental Interest Test

Plaintiffs and Defendants agree that because this case was transferred to the Southern District of New York from the Central District of California, California choice of law rules govern this Court's analysis of the applicable substantive law. *See Van Dusen v. Barrack*, 376 U.S. 612, 642, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); (*see* UMG Mem., at 3; Pls.' Opp'n to UMG's Mot. to Dismiss ("Opp'n to UMG"), ECF No. 79, at 3; Opp'n to Felton, at 6).

According to Defendants,[4] the right of publicity is a personal property right, and California Civil Code § 946 provides that "personal property rights are governed by the law of the property owner's domicile." (UMG Reply Br. ("UMG Reply"), ECF No. 83, at 3 (citing, *inter alia, Cairns v. Franklin Mint Co.* ("*Cairns I*"), 24 F.Supp.2d 1013, 1025, 1028 (C.D.Cal.1998); *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 599 (C.D.Cal.2015); Cal. Civ. Code § 946).) Therefore, Defendants argue that because Rams is a domiciliary of Denmark, which does not expressly recognize a right

to publicity, "[Rams] is not entitled to recovery under California's right of publicity law." (UMG Mem., at 4-5). Defendants also contend that California laws were "designed to protect the publicity rights of California residents." (*Id.*; Felton Mem., at 8.)

*Cairns I* and *Lightbourne*, however, do not support the proposition that the law of the plaintiff's domicile automatically applies and that Rams is barred from recovery. Indeed, the district court in *Cairns*, stated that its decision regarding the application of § 946 to § 3344.1, the California statute protecting *the post-mortem right* to publicity, "has no bearing on choice of law questions presented under § 3344," under which Rams brings her claims. *Cairns I*, 24 F.Supp.2d at 1028 n. 11. The *Cairns I* court reasoned that the living and post-mortem rights "are not parallel in all respects," *id.* at 1028, and that "§ 3344 contains no definitive statement that the rights protected under the statute are 'property rights.'" *Id.*, at 1028 n. 11. While the *Cairns* court acknowledged that courts deciding "cases based on publicity rights under § 3344 have *typically* selected the law of the property owner's domicile," those courts did so only after using California's governmental interests test and weighing the fact that in each of those cases, the plaintiffs were domiciled in California. *Id.* at 1028 (citing cases). Similarly, *Lightbourne* merely states that in California, "the intellectual property owner's resident state *has an interest* in applying its own law to such an injury." *Lightbourne*, 307 F.R.D. at 599 (emphasis added). Thus, courts must still perform California's three-step governmental interest analysis to determine whether to apply the sub-

---

4. As Felton joins UMG's motion and briefing regarding Rams' right of publicity claim, this Court refers to arguments in UMG's briefing as belonging to that of both Defendants. (*See* Felton Reply Br. ("Felton Reply"), ECF No. 84, at 4 n. 1.)

stantive laws of California or Denmark. *See id.*

■■■■■ Under the governmental interest test,

(1) the court examines the substantive laws of each jurisdiction to determine whether the laws differ as applied to the relevant transaction, (2) if the laws do differ, the court must determine whether a true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied, and (3) if more than one jurisdiction has a legitimate interest ... the court [must] identify and apply the law of the state whose interest would be more impaired if its law were not applied ... Only if both states have a legitimate but conflicting interest in applying its own law will the court be confronted with a "true conflict" case.

*Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir.2001) (citing *Abogados v. AT & T, Inc.*, 223 F.3d 932, 934 (9th Cir.2000)). Where "there is no material difference, there is no choice-of-law problem and the court may proceed to apply California law." *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436, 63 Cal.Rptr.3d 816, 840 (2007), *as modified* (Sept. 5, 2007). "The party arguing that foreign law governs has the burden to identify the applicable foreign law, show that it materially differs from California law, and show that the foreign law furthers an interest of the foreign state." *Id.*; *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F.Supp.3d 937, 946 (C.D.Cal. 2015) ("Defendant bears the burden to defeat the presumption that California law applies and to 'show a compelling reason justifying displacement of California law.'") (internal citation and quotation marks omitted).

## 1. The substantive laws of each jurisdiction materially differ.

■■■ The first step of governmental interest analysis examines the substantive law of the competing jurisdictions. *Downing*, 265 F.3d at 1005. California and Denmark differ with regard to right of publicity claims. California recognizes both a statutory and common law "right of publicity." *See Perkins v. Linkedin Corp.*, 53 F.Supp.3d 1222, 1242 (N.D.Cal.2014) (quoting *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691–92 (9th Cir.1998) (holding that the statutory right of publicity "complement[s]" but does not replace or codify the common law right of publicity) (alterations in original)). Both the common law and § 3344 "prohibit[ ] the nonconsensual use of another's name, voice, signature, photograph, or likeness for advertising, selling, or soliciting purposes, and creates a cause of action for persons injured by such actions." *Fraley v. Facebook, Inc.*, 830 F.Supp.2d 785, 796–97 (N.D.Cal.2011).

■■■■ To state a common law misappropriation claim, a plaintiff must plead sufficient facts to establish "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiffs name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Downing*, 265 F.3d at 1001 (quoting *Eastwood v. Super. Ct.*, 149 Cal. App.3d 409, 198 Cal.Rptr. 342, 347 (1983)) (internal quotation marks omitted). A plaintiff must also plead "a knowing use by the defendant," and "a direct connection between the alleged use and the commercial purpose" in addition to the elements of the common law action to state a § 3344 claim. *Id.* Furthermore, California's statutory protection is not limited to celebrities. *See Miller v. Collectors Universe, Inc.*, 159 Cal.App.4th 988, 72 Cal.Rptr.3d 194, 205 (2008) (finding that the "[l]egislature pro-

vided a practical remedy for a non-celebrity plaintiff whose damages are difficult to prove").

Denmark also recognizes a right of publicity, but it is not statutory. *See* Andrew B. Ulmer, *Media, Advertising & Entertainment Law Throughout the World*, § 10:23 (2015); Jens Edvald & Lars Halgreen, *Sports Law in Denmark*, 31 (2012) ("Protection of the so-called 'image right,' that is to say the name, picture, or likeness of sports personalities or other well-known celebrities from commercial misappropriation has had a strong precedent in Danish jurisprudence since the first Danish landmark decision in 1965 (the Buster Larsen case, 1965 UfR 126).").[5] "In case[s] of misappropriation of a personality, name, photo, voice, etc. for marketing purposes, then the [Consolidated Marketing Practices Act] may be applied." Ulmer, *supra*, § 10:23. The relevant sections of the Marketing Practices Act, §§ 1 and 18, provide:

> 1. Traders subject to this Act shall exercise good marketing practice with reference to consumers, other traders and public interests . . . .
>
> 18. Traders must not use business identifiers and similar devices that do not belong to them, nor use their own business identifiers in a manner likely to cause confusion with those of others.

*See* Law no. 58 of 20.1.2012 Danish Consolidated Marketing Practices Act ("Danish MPA"), *as changed by* Sec. 33, Law no. 1231 of 18.12.2012, *as changed by* Sec. 5, Law no. 1387 of 23.12.2012, *as changed by* Sec. 1, Law no. 378 of 17.4.2013. Danish courts use these provisions "in free combination" with the "common law doctrine of commercial misappropriation." Edvald &

Halgreen, *supra*, at 31. "[I]f personal information about a well-known person is obtained, distributed, or published, or if defamation has occurred, then the Penal Code's sections on invasion of privacy or defamation may be applied," in addition to the Danish MPA and/or common law. Ulmer, *supra*, at § 10:23.

In order to establish a violation of the common law right of publicity in Demark, a plaintiff must prove the following: "1) Misappropriation (i.e., no consent obtained); 2) of the aggrieved party's name, image, etc.; 3) for commercial purposes." Ulmer, § 10:25. A plaintiff may seek either injunctive relief "and/or damages, and, possibly, compensation for tort." *Id.*

The parties disagree as to whether the Danish right to publicity applies to non-celebrities, and, thus, is coterminous with California's protections of the right. Defendants argue that only well-known persons may recover under the Danish Penal Code. (*See* UMG Mem., at 5, 8; Suppl. Br., at 3). Defendants also argue that recovery for "damages under the Danish MPA require a showing of 'defamation' that 'led to an economic loss,' " but cite to a treatise entry regarding invasion of privacy, rather than the right of publicity. (UMG Mem., at 8 (citing Ulmer, *supra*, § 10:20 ("Invasion of Privacy: Types of relief available")). Finally, Defendants erroneously contend that "Danish law is similar to British law," which does not recognize a right of publicity, "but instead 'provide[s] *celebrities* with certain other limited protections against commercial misappropriation." (*Id.* (citing *Love*, 611 F.3d at 611).) Danish common law recognizes a right of publicity. *See* Edvald & Halgreen, *supra*, at 31.

---

**5.** The parties agree that secondary sources may be consulted to determine foreign law. (*See* Suppl. Br., at 3; Suppl. Opp'n, at 3 (citing *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 611 (9th Cir.2010).) *See also* Fed. R. Civ. P. 44.1 ("In determining foreign

law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.").

Plaintiffs, on the other hand, argue that "[a]ny individual, whether he or she is famous, has a protectable right and has the sole right to decide whether his or her name or picture should be used commercially." (*Id.* (citing Ex. A, Lasse A. Søndergaard Christensen, Denmark, in *Getting the Deal Through: Right of Publicity*, ¶ 6 (Jonathan D. Reichman, ed., 2014) (noting that celebrity "is considered an aggravating factor").) However, whether "Danish law provides rights of privacy and publicity analogous to those provided under California law," (Suppl. Opp'n, at 3), in that Danish protection of publicity rights extends to non-celebrities, as Plaintiffs contend, is not dispositive of the choice of law inquiry. Even if Danish law and California materially differ in this regard, Denmark has no interests that would be more impaired if its laws were not applied, as explained below.

## 2. A True Conflict Does Not Exist.

This Court next determines the interests of California and those of Denmark, if any, in having their respective laws enforced. *See Downing*, 265 F.3d at 1005 (internal citations omitted). If one jurisdiction has no interest in having its laws applied, there is no true conflict, and the law of the jurisdiction with an interest applies. *Love*, 611 F.3d at 610 (holding that there was no true conflict where California had no interest in applying its law to tortious conduct occurring out of state that allegedly injured a non-California plaintiff).

 Plaintiffs correctly argue California has an interest in applying its law because "one of the primary purposes of creating a cause of action in tort is to deter misconduct within its borders by persons present within its borders." *Downing*, 265 F.3d at 1006. Indeed,

California choice-of-law cases ... continue to recognize that a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its

borders ... and in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future.

*Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06–00774, 2010 WL 3034060, at *13 (C.D.Cal. July 30, 2010) (internal citation and quotation marks omitted). Here, Plaintiffs allege that, without Rams' consent, Defendants knowingly distributed her image throughout California, where Felton marketed and promoted his music, and profited off the use of her image, thereby violating her rights under § 3344. (SAC ¶¶ 6-8, 43-47; Opp'n to UMG, at 8); *see Downing*, 265 F.3d at 1001 (citing *Eastwood*, 198 Cal.Rptr. 342, 347 (1983)). Applying California law, Rams claim for misappropriation of likeness would survive Defendants' motion to dismiss. *See Downing*, 265 F.3d at 1001.

Thus, the determinative issue is whether Denmark has any interests in having its laws applied. According to Plaintiffs, Denmark has no interest in having its law applied because it has no statutory right of publicity. (Opp'n to UMG, at 4; Tr., at 59:8-20.) Denmark, like Hawai'i at the time of the *Downing* decision, lacks a statute expressly codifying its common law right of publicity. *See Downing*, 265 F.3d at 1007; Edvald & Halgreen, *supra*, at 31; (Tr., at 55:6-9). Without a Hawai'ian statute codifying the common law right to publicity, the Ninth Circuit held that Hawai'i "had no interest in having its law applied to [an] action brought in California" involving five plaintiffs domiciled in Hawai'i. *Downing*, 265 F.3d at 1006–07. The *Downing* court reasoned, "It is pure fancy to believe that Hawai'i would wish to restrict its residents from recovery that others could obtain in California solely be-

cause it had not enacted a statute like California's to complement its common law action for the same offense." *Id.* Plaintiffs similarly argue that because Denmark has not codified its common law cause of action for misappropriation of likeness, Denmark does not intend to restrict its residents from bringing claims under California's laws. (*See* Tr., at 55:6-9.)

Defendants argue that Denmark has a statutory right of publicity that is narrower than that of California's. According to Defendants, the Danish MPA reflects a conscious policy choice not to enact a statute that allows non-celebrity plaintiffs to recover for violations of their right to publicity. (Suppl. Br, at 2 (citing *Love*, 611 F.3d at 611 (finding that Great Britain, as the locus of the misappropriation of identity, had a greater interest than California in a case involving a non-California plaintiff)). However, Defendants lack direct support for the proposition that "the Denmark legislature considered this issue [of non-celebrities being able to bring right of publicity claims] and rejected it." (Tr., at 14:16-17:8.) Based on this Court's review of the MPA, it does not codify a "right to publicity" that specifically disallows recovery for non-celebrities. *See* Danish MPA, §§ 1, 18; (Tr., at 17:1-6).

While the *Lightbourne* court noted that "[e]very state has an interest in having its law applied to its resident claimants," *see Lightbourne*, 307 F.R.D. at 599 (internal citations omitted), Defendants have not cited to any authority stating that this interest is always dispositive. Here, a competing jurisdiction has a common law, but not statutory right, corresponding to California's right of publicity, whereas *Lightbourne* dealt only with jurisdictions that had enacted statutes that represented their "conscious choices regarding the nature and scope of relief a resident may seek for violation of his or her right of

publicity." *See Lightbourne*, 307 F.R.D. at 599.

Defendants have failed to carry their burden to demonstrate that the law of the original forum state, California, *see Frontier Oil*, 63 Cal.Rptr.3d at 840, should be displaced in favor of Denmark's common law. Denmark has expressed no interest in limiting the recovery of its residents. With no true conflict at hand, California law applies to Rams's claim. Under California law, Rams has sufficiently alleged that Defendants knowingly distributed and profited from the use of her image throughout California without her consent, violating her right of publicity. (SAC ¶¶ 6-8, 43-47; Opp'n to UMG, at 8); *see Downing*, 265 F.3d at 1001 (citing *Eastwood*, 198 Cal. Rptr. 342, 347 (1983)). Defendants' motion to dismiss Rams's right of publicity claim is therefore DENIED.

## V. CONCLUSION

Having sufficiently stated federal claims for vicarious and contributory copyright infringement against Defendant Felton, Felton's motion to dismiss the Second Claim for Relief is DENIED.

Rams has stated a claim for misappropriation of likeness under California common law and Civil Code § 3344 upon which relief can be granted. Accordingly, Defendants UMG and Felton's motions to dismiss the Fourth Claim for Relief is DENIED.

The Clerk of Court is directed to close the motions at ECF Nos. 64, 72.

SO ORDERED.